# UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MICAH 6:8 MISSION and<br><br>HEALTHY GULF,<br><br>Plaintiffs,<br><br>v.<br><br>REYNOLDS METALS COMPANY, LLC,<br><br>Defendant. | Case No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

## STATEMENT OF THE CASE

1.     Micah 6:8 Mission and Healthy Gulf (Plaintiffs) bring this action for declaratory and injunctive relief, civil penalties, and other appropriate relief against Reynolds Metals Company, LLC (Alcoa Reynolds) for significant and ongoing violations of the Federal Water Pollution Control Act, 33 U.S.C. 1251 et. seq. (Clean Water Act or CWA) at the Alcoa Reynolds Carbon Plant, 4040 West Tank Farm Road, Lake Charles, LA 70605 (the "Plant").

2.     Under the disclosure requirements of the Emergency Planning and Community Right-to-Know Act, for years Alcoa Reynolds reported that it was discharging lead, benzo[g,h,i]perylene, and other polycyclic aromatic compounds (PAHs) (the "Alcoa Pollutants") in the Plant's effluent. This is to be expected; petcoke contains lead, benzo[g,h,i]perylene, and other PAHs, and Alcoa's effluent comes into contact with petcoke. But because Alcoa Reynolds never informed the Louisiana Department of Environmental Quality (LDEQ) about these pollutants in its effluent, Alcoa Reynolds' Clean Water Act permit does not authorize discharge of, or otherwise address, the Alcoa Pollutants.

3.     As a result, Alcoa Reynolds is: 1) violating the Clean Water Act by discharging the Alcoa Pollutants from the Plant without permit authorization; and 2) violating its National Pollutant Discharge Elimination System (NPDES) Permit LA0003735 (the "Permit") by failing to comply with its requirement that "[w]here the permittee becomes aware that it failed to submit any relevant facts in a permit application, or submitted incorrect information in a permit application . . . it shall promptly submit such facts or information," (the "application correction requirement".) Exhibit 1, 2023 Alcoa Reynolds Permit and Fact Sheet at 60.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 33 U.S.C. 1365(a) and 28 U.S.C. 1331.

5. Pursuant to 33 U.S.C. 1365(c), venue is proper because the violations occurred and continue to occur in this district.

6. Pursuant to 33 U.S.C. 1365(b)(1)(A), more than 60 days prior to commencing this action Plaintiffs gave notice to all required parties, including: 1) Alcoa Reynolds; 2) LDEQ; and 3) the Environmental Protection Agency (EPA), by mailing them the notice of intent to sue (NOI) on October 31, 2024. Exhibit 2 (NOI); Exhibit 3 (green cards). The NOI provided sufficient information for Alcoa Reynolds to identify the specific CWA and permit provisions Plaintiffs allege it has violated, specific descriptions and dates for these violations, and notice of suit for subsequent violations of these requirements.

7. Neither EPA nor the State of Louisiana has commenced or is diligently prosecuting a civil or criminal action against Alcoa Reynolds in a court of the United States or the State of Louisiana.

8. This action is not limited or barred by any existing administrative penalty order for which Alcoa Reynolds has paid a penalty under the CWA or comparable state law. Neither LDEQ nor EPA has assessed penalties for any of the violations alleged herein.

9. This action is not limited or barred by any pending or potential administrative penalty order because: 1) The NOI was sent prior to EPA or LDEQ commencing any administrative penalty action for the violations alleged herein; and 2) this action has been filed before the 120th day after the date the NOI was sent.

10. As described below, Alcoa Reynolds has repeatedly violated the CWA and the Permit, and a reasonable trier of fact could find a continuing likelihood these violations will continue until the Court enjoins Alcoa Reynolds from violating the CWA and the Permit and orders it to remedy the causes of the violations.

## PARTIES

11. Micah 6:8 Mission is a 501(c)(3) non-profit membership organization located at 624 W. Verdine, Sulphur, LA 70663. Micah 6:8 Mission has associational standing to bring this action. Exhibit 5 (organizational standing declarations).

12. Healthy Gulf is a 501(c)(3) non-profit membership organization located in offices throughout the Gulf, including 935 Gravier St #700, New Orleans, LA 70112. Healthy Gulf has associational standing to bring this action. Exhibit 5 (organizational standing declarations).

13. This litigation seeks to protect the water quality of the Calcasieu River and its connected waters, including the Calcasieu Ship Channel, the Intracoastal Waterway, Moss Lake, Mud Lake, and Calcasieu Lake (together, the "Calcasieu River"), the River's birds and aquatic life, and the people who fish, boat, walk along, and otherwise enjoy the Calcasieu River and its fauna.

14. These interests are germane to Micah 6:8 Mission's purposes, which include advocating for environmental sustainability and resilience, preparing for environmental challenges and disasters, and protecting the overall health of its community

15. These interests are also germane to Healthy Gulf's purposes. Healthy Gulf is a membership organization whose purpose is to collaborate with and serve communities who love the Gulf of Mexico by providing the research, communications, and coalition-building tools needed to reverse the longstanding pattern of over-exploitation of the Gulf's natural resources.

Healthy Gulf's vision is a healthy Gulf of Mexico, returned to its former splendor, which supports a thriving ecosystem that includes the Gulf's natural resources and, just as importantly, the people, communities, and cultures that depend on those resources. Healthy Gulf also believes that supporting the environmental health and ecosystem richness of the Gulf region is necessary to secure quality of life, sense of place, economic vitality, and social justice within all Gulf communities. As part of Healthy Gulf's work for a healthy Gulf of Mexico, it advocates for stronger NPDES permit limits on pollution entering the Gulf and the rivers that feed it—both for the protection of the Gulf's natural resources and the protection of the people living on the Gulf.

16. Neither the claims asserted, nor the relief requested in this litigation, require the participation of Micah 6:8 Mission's or Healthy Gulf's individual members.

17. Plaintiffs' members who fish in, and eat fish from, the Calcasieu River downstream of the Plant have been injured by the discharges of the Alcoa Pollutants, particularly mobile, bioaccumulative pollutants like lead. These pollutants can travel long distances downstream and adversely affect the health and quantity of fish and the health of people eating those fish, which diminishes these members' ability to fish, their health, and their enjoyment of eating what they catch.

18. Plaintiffs' members also boat and walk along the Calcasieu River downstream of the Plant and enjoy watching for fish, other aquatic life, and birds. The Alcoa Pollutants injure these members by increasing pollution in the Calcasieu River and this fauna, and by increasing the uncertainty about pollution in the Calcasieu River. This pollution lessens these members' enjoyment of recreating in and along the Calcasieu River, increases their concerns and uncertainty about these waters' general health, fauna, and the safety of people eating fish from these waters, and may lead to fewer birds and fish for Plaintiffs' members to observe.

19. Micah 6:8 Mission and Healthy Gulf members thus are harmed by the Alcoa Pollutants and by Alcoa Reynolds' failure to correct its permit application and disclose this pollution, depriving them of important information about pollution in the Calcasieu River. These members thus have standing to sue in their own right. Exhibit 6 (member standing declarations).

20. These injuries can be redressed by a decision requiring Alcoa Reynolds to stop unpermitted discharge of the Alcoa Pollutants and comply with the application correction requirement by disclosing the quantity of Alcoa Pollutants the Plant is discharging. LDEQ would then either amend the Permit (requiring Alcoa Reynolds to monitor and report discharges of the Alcoa Pollutants and authorizing or limiting these discharges so as to not cause or contribute to violation of water quality standards), or refuse to amend the Permit and require these discharges to stop.

21. Defendant Alcoa Reynolds owns, manages, and is responsible for the Plant's operations, and is the holder of the Permit.

## STATUTORY AND REGULATORY FRAMEWORK

22. The CWA's goals are the restoration and maintenance of the chemical, physical, and biological integrity of the Nation's waters. To achieve these, the Act prohibits the "discharge of any pollutant by any person" into waters of the United States except as in compliance with certain enumerated sections of the Act.  33 U.S.C. 1311(a).

23. 33 U.S.C. 1362(12) defines "discharge of a pollutant" as "any addition of any pollutant to navigable waters from any point source . . .".

24. 33 U.S.C. 1362(6) defines "pollutant" as "sewage… sewage sludge…biological materials… and industrial, municipal . . . waste discharged into water."

25. 33 U.S.C. 1362(7) defines "navigable waters" as "the waters of the United States . . ."

26. 33 U.S.C. 1362(14) defines a "point source" as "any discernable, confined and discrete conveyance, including but not limited to any pipe, ditch . . . conduit . . . discrete fissure, container . . . from which pollutants are or may be discharged . . ." Stormwater discharges associated with industrial activities are point sources. 33 U.S.C. 1342(p)(2)(B), (p)(3)(A).

27. 33 U.S.C. 1365(a)(1) enables citizens to bring suit against "any person . . . who is alleged to be in violation of . . . an effluent standard or limitation" or "an order issued by . . . a State with respect to such a standard or limitation".

28. An "effluent standard or limitation" includes "an unlawful act under subsection (a) of section 1311 of this title" and "a permit or condition of a permit issued under section 402 [33 U.S.C. 1342] . . . that is in effect under [the CWA]." 33 U.S.C. 1365(f)(7). Discharging pollutants to navigable waters from a point source without a permit is "an unlawful act under subsection (a) of section 1311 of this title." The Permit is a "permit … issued under section 402 . . . that is in effect under [the CWA]."

29. 33 U.S.C. 1362(5) defines "person" to include "an individual, corporation, [or] partnership."

30. The Permit states that Alcoa Reynolds "shall comply with all terms and conditions of this permit … Any permit noncompliance constitutes a violation of the Clean Water Act." Ex. 1 at 49.

31. 33 U.S.C. 1319(d) provides that any person who violates 33 U.S.C. 1311 or any permit condition or limitation implementing that section or others identified in 33 U.S.C. 1319(d) in a permit issued under 33 U.S.C. 1342 is subject to a civil penalty.

32.     In accordance with the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. 2461, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. 3701, any person who violates 33 U.S.C. 1311 or any other section identified under 33 U.S.C. 1319(d), or any permit condition or limitation implementing those sections in a permit issued under 33 U.S.C. 1342, is subject to a civil penalty of up to $64,618 per day for each violation. 33 U.S.C. 1319(d). EPA's most recent annual update to the statutory civil penalties, as adjusted for inflation, was effective as of December 27, 2023. 40 CFR 19.4.

## FACTUAL BACKGROUND

### *The Alcoa Reynolds Carbon Plant*

33.     The Plant is a petroleum coke (petcoke or coke) calcining facility which uses petcoke as its raw material. Petcoke is the high-temperature boiling residual hydrocarbons by-product that remains after refineries extract gasoline, diesel, and other higher-value products from crude oil. Petcoke includes ash and can be fairly soft due to its residual moisture and liquid hydrocarbon content.

34.     While petcoke's exact components depend upon the crude oil used, EPA petcoke analyses show the presence of lead, nickel, vanadium, and a wide array of PAHs, including benzo[g,h,i]perylene, as well as 1-methyl naphthalene; 2-methyl naphthalene; acenaphthene; acenaphthylene; anthracene; benzo[a]anthracene; benzo[a]pyrene; benzo[b]fluoranthene; chrysene; dibenzo[a,h]anthracene; dibenzo[g,h,i]perylene; dibenzo(a,h)anthracene; fluoranthene; indeno(1,2,3-cd)pyrene; naphthalene; phenanthrene; and pyrene. EPA, *Screening-Level Hazard Characterization for the Petroleum Coke Category* (2011); EPA Chicago Regional Lab, *Analyses of KCBX Pet Coke Samples in Southeast Chicago* (2014).

35. Stormwater flowing over an industrial site can pick up pollutants like sediment, debris, and chemicals. *NPDES Electronic Reporting Rule*, 79 Fed. Reg. 71066, 71076 (Dec. 1, 2014). EPA instructs permit applicants that industrial stormwater is likely to contain pollutants associated with the facility's industrial processes: "For example, if you manufacture pesticides, you should expect those pesticides to be present in contaminated stormwater runoff." EPA NPDES Permit Application Form 2C Instructions at 2C-3.

36. The Plant discharges approximately 2 million gallons a day of effluent to the Calcasieu River, primarily through Outfalls 002, 007, 011, 014, and 017.

37. Outfall 002 includes the continuous discharge of treated process wastewater from the coke calcining operations; coke pile crusting agent spray water (dust suppression water); coke barge dewatering waters; equipment, vehicle, and building washwater within process areas; and process area stormwater runoff. Ex. 1 at 7. Treated process wastewater from the coke calcining operations comes into contact with petcoke. Coke pile crusting agent spray water comes into contact with petcoke. Coke barge dewatering waters come into contact with petcoke. Equipment, vehicle, and/or building washwater within process areas can come into contact with petcoke. Process area stormwater runoff can come into contact with petcoke.

38. Outfall 007 includes the intermittent discharge of stormwater runoff from the southeastern portion of the facility. Ex. 1 at 8. The stormwater discharged through Outfall 007 can come into contact with petcoke.

39. Outfall 011 includes the intermittent discharge of stormwater runoff from the northwestern portion of the facility. Ex. 1 at 33. The stormwater discharged through Outfall 011 can come into contact with petcoke.

40. Outfall 014 includes the intermittent discharge of stormwater runoff from the north central portion of the facility. Ex. 1 at 36. The stormwater discharged through Outfall 014 can come into contact with petcoke.

41. Outfall 017 includes the intermittent discharge of stormwater runoff from the northeastern portion of the facility. Ex. 1 at 41. The stormwater discharged through Outfall 017 can come into contact with petcoke.

### *Alcoa Reynolds TRI Submissions*

42. EPA's Toxics Release Inventory (TRI) program requires facilities in certain industries, including petcoke calcining facilities, to annually report on "Form R" their releases of certain toxic chemicals. 40 CFR 372.5, 372.22. In completing Form R, a senior official must sign that "I hereby certify that I have reviewed the attached documents and that, to the best of my knowledge and belief, the submitted information is true and complete and that the amounts and values in this report are accurate based on reasonable estimates using data available to the preparers of this report."

43. Alcoa Reynolds' 2019 Form R reported, based on its effluent monitoring, that the Plant discharged 0.1 lbs. lead, 1.3 lbs. benzo[g,h,i]perylene, and 8.6 lbs. PAH to the Calcasieu River.

44. Alcoa Reynolds' 2020 Form R reported, based on its effluent monitoring, that the Plant discharged 0.1 lbs. lead, 0.132 lbs. benzo[g,h,i]perylene, and 11.8 lbs. PAH to the Calcasieu River.

45. Alcoa Reynolds' 2021 Form R reported, based on its effluent monitoring, that the Plant discharged 0.1 lbs. lead, 1.32 lbs. benzo[g,h,i]perylene, and 8.6 lbs. PAH to the Calcasieu River.

46. Alcoa Reynolds' 2022 Form R reported, based on its effluent monitoring, that the Plant discharged 0.2 lbs. lead, 3.4 lbs. benzo[g,h,i]perylene, and 22 lbs. PAH to the Calcasieu River.

47. Alcoa Reynolds' 2023 Form R reported, based on its effluent monitoring, that the Plant discharged 0.1 lbs. lead, 2.2 lbs. benzo[g,h,i]perylene (a specific PAH), and 14.2 lbs. PAH to the Calcasieu River.

48. The Plant thus discharged lead, PAHs, and benzo[g,h,i]perylene into the Calcasieu River, a water of the United States, from 2019 to 2023.

### *Alcoa Reynolds Permit Application*

49. Alcoa Reynolds applied for its current NPDES permit on July 26, 2022. Exhibit 4, Alcoa Reynolds 2022 Permit Application ("Application") at 1. The Application required Alcoa Reynolds to mark whether each of a long list of pollutants is "believed present," or "believed absent" in each outfall's discharge. Ex. 4 at Table 2C, 51–176. Alcoa Reynolds was required to make this determination based on its knowledge of the Plant's raw materials, maintenance chemicals, intermediate and final products and byproducts, and any previous analyses known to Alcoa Reynolds of its own or similar effluent. EPA NPDES Permit Application Form 2C Instructions at 2C-3.

50. Applicants must truthfully state whether pollutants are believed absent or present (40 CFR 122.22(d)), and applicants may not be willfully blind to the presence of pollutants in their discharge. Despite its own TRI reporting of the Alcoa Pollutants, the presence of these pollutants in petcoke, and these wastestreams' contact with petcoke, Alcoa Reynolds stated in the Application that lead and benzo[g,h,i]perylene were "believed absent," from all of its effluent, including the effluent from Outfalls 002, 007, 011, 014, and 017. Ex. 4 at Table 2C, 51–

176. Alcoa Reynolds also stated that all the PAHs listed in Table 2C were "believed absent," including those typically present in petcoke (acenaphthene, acenaphthylene, anthracene, benzo[a]anthracene, benzo[a]pyrene, benzo[b]fluoranthene, chrysene, dibenzo[a,h]anthracene, indeno(1,2,3-cd)pyrene, phenanthrene, and pyrene). *Id.*

51. Alcoa Reynolds provided no information in the Application why it believed lead, benzo[g,h,i]perylene, and PAHs were absent from the Outfall 002, 007, 011, 014, and 017 discharges despite the TRI data, the presence of these pollutants in petcoke, and these wastestreams' contact with petcoke.

### *Alcoa Reynolds Permit*

52. LDEQ issued the Permit to Alcoa Reynolds on September 23, 2023. Ex. 1 at 1. The Permit limits chemical oxygen demand (COD), Total Organic Carbon (TOC), oil and grease, pH, Total Suspended Solids (TSS), and fecal coliform. Ex. 1 at 27–42. LDEQ does not discuss lead, benzo[g,h,i]perylene, and PAHs in the Permit or the fact sheet as potential pollutants of concern, and the Permit does not include any limits or monitoring requirements for any of the Alcoa Pollutants, or any other evidence it authorizes discharge of the Alcoa Pollutants.

53. Even though EPA's NPDES Permit Writers' Manual directs state permitting agencies to research potential pollutants of concern when drafting a facility's permit by reviewing a number of government information sources, including TRI data (NPDES Permit Writers' Manual at 4–17, 19) LDEQ has stated it did not review the Plant's TRI data before issuing the Permit. Alcoa Reynolds' discharges of the Alcoa Pollutants were thus not within the reasonable contemplation of LDEQ when it issued the Permit.

## CAUSES OF ACTION

### *Count 1: Unpermitted Discharges of Lead, Benzo[g,h,i]perylene, and PAHs*

54. Each paragraph above is incorporated by reference herein as if restated in full.

55. The CWA prohibits the discharge of pollutants from a point source into waters of the United States unless authorized by and in compliance with a CWA permit. 33 U.S.C. 1311(a), 1342(b), 1342.

56. Because the Permit does not authorize Alcoa Reynolds to discharge the Alcoa Pollutants from Outfalls 002, 007, 011, 014, and 017 into the Calcasieu River, by doing so Alcoa Reynolds has violated and continues to violate 33 U.S.C. 1311(a) by discharging pollutants from a point source into waters of the United States without permit authorization.

57. Each day Alcoa Reynolds discharges lead, benzo[g,h,i]perylene, or PAHs from Outfalls 002, 007, 011, 014, and 017 into the Calcasieu River without permit authorization is a separate violation of 33 USC 1311(d), and penalties can be assessed for each day of violation.

### *Count 2: Failure to Correct Permit Application*

58. Each paragraph above is incorporated by reference herein as if restated in full.

59. The Permit requires that "[w]here the permittee becomes aware that it failed to submit any relevant facts in a permit application, or submitted incorrect information in a permit application or in any report to the Director, it shall promptly submit such facts or information." Ex. 1 at 41. This application correction requirement is an ongoing duty.

60. Alcoa Reynolds stated in the Application that lead, benzo(g,h,i)perylene, and all PAHs listed in Table 2C, including those present in petcoke, were "believed absent," from its effluent, including the effluent from Outfalls 002, 007, 011, 014, and 017. Ex. 4 at Table 2C, 51–176.

61. Petcoke contains lead, benzo[g,h,i]perylene and other PAHs, and the effluent discharged from outfalls 002, 007, 011, 014, and 017 (both process water and stormwater) comes into contact with petcoke. Based on its own monitoring, Alcoa Reynolds reported in its 2019, 2020, 2021, 2022, and 2023 TRI Form Rs that the Plant's effluent contained measurable quantities of lead, benzo[g,h,i]perylene and other PAHs.

62. Alcoa Reynolds has not corrected the Application to reflect the presence of lead, benzo[g,h,i]perylene and other PAHs in its effluent.

63. Alcoa Reynolds' ongoing failure to comply with the Permit's application correction requirement violates the Permit and 33 U.S.C. 1311(a).

64. Each day Alcoa Reynolds fails to correct the Application constitutes a separate violation of the Permit and the CWA, and penalties can be assessed for each day of violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Declare that Alcoa Reynolds is in violation of the Permit and the CWA;

B. Enjoin Alcoa Reynolds from further violating the Permit and the CWA;

C. Order Alcoa Reynolds to correct the Application to disclose its discharges of lead, benzo[g,h,i]perylene, and other PAHs and apply for a permit modification based on these discharges;

D. Order Alcoa Reynolds to assess and remediate the harm caused by its violations;

E. Assess Alcoa Reynolds civil penalties of up to $64,618 for each day of violation;

F. Pursuant to 33 USC 1365(d), award Plaintiffs their litigation costs, including reasonable attorney and expert fees, costs, and expenses, including future oversight costs;

G. Retain jurisdiction to ensure compliance with the Court's decree; and

H. Grant such other relief as the Court deems just and proper.

Date: February 10, 2025.

s/CLAY J. GARSIDE
Waltzer Wiygul & Garside LLC
3201 General DeGaulle Dr., Ste 200
New Orleans, LA 70114
(504) 340-6300
clay@wwglaw.com

s/MARGARET PARISH*
Senior Attorney, Clean Water Program
Environmental Integrity Project
1000 Vermont Avenue NW, Suite 1100
Washington, DC 20005
(720) 841-0652
mparish@environmentalintegrityproject.org

* Admission for Pro Hac Vice Admission pending

*Counsel for Healthy Gulf and Micah 6:8 Mission*

*Alcoa Reynolds Carbon Plant*

# COMPLAINT EXHIBITS
# TABLE OF CONTENTS

**Exhibit 1**   2023 Alcoa Reynolds Permit

**Exhibit 2**   Notice of Intent to Sue

**Exhibit 3**   Mail Cards and Receipts for NOI

**Exhibit 4**   2022 Alcoa Reynolds Permit Application

**Exhibit 5**   Organizational Standing Declarations

**Exhibit 6**   Member Standing Declarations