UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **MICAH 6:8 MISSION ET AL** | **CASE NO. 2:25-CV-00156** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **REYNOLDS METALS CO L L C** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM RULING

Before the Court is "Reynolds Metals Company, LLC's [Reynolds] Motions to Dismiss" (Doc. 10) the claims made against it by Plaintiffs, MICAH 6:8 Mission and Healthy Gulf ("MICAH") pursuant to the Federal Rules of Civil Procedure 12(b)(6) (failure to state a claim), or alternatively, 12(b)(1) (lack of subject matter jurisdiction). Also before the Court is a "Motion to Take Judicial Notice Pursuant to Fed. R. Evid. 201 in Connection with Defendant's Motion to Dismiss" (Doc. 11) filed by Reynolds, followed by "Plaintiff's Motion to Strike Exhibits 3 and 4 to Defendant's Motion to Dismiss" (Doc. 19).

## BACKGROUND

This suit arises from a Clean Water Act ("CWA") citizen's suit, in which Plaintiffs, MICAH 6:8 Mission and Healthy Gulf (collectively referred to as "MICAH") seek injunctive relief against Defendant, Reynolds, to prevent them from continuing their alleged release of pollutants into the Calcasieu River and its connected bodies of water.[1] Plaintiffs, MICAH, specifically allege the following: Defendant, a petroleum coke

---
[1] Doc. 1.

calcining facility, possess a National Pollutant Discharge Elimination System (NPDES) permit.[2] This permit authorizes Reynolds to discharge certain pollutants into the waters of the United States.[3] Reynolds is required to truthfully report all pollutants included in their discharge to ensure their compliance with the permit and federal law.[4]

Plaintiff alleges that Defendant releases approximately two million gallons of liquid waste into the Calcasieu River each day through Outfalls 002, 007, 011, 014, and 017.[5] MICAH accuses Reynolds of breaching its permit by knowingly discharging substances identified as "lead, benzo[g,h,i]perylene and other polycyclic aromatic compounds (PAHs)," (sometimes referred to herein as "pollutants") which have severely polluted the Calcasieu River's waters and wildlife. [6]

## LAW AND ANALYSIS

MICAH filed suit on February 10, 2025, raising claims against Reynolds for violations of the CWA and 33 U.S.C. 1311(a), 1311(d), 1342, and 1342(b).[7] Reynolds has moved to dismiss the suit for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), or alternatively, for the Court's potential lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[8]

---

[2] *Id.* at § § 49, 52.
[3] *Id.* at 52.
[4] *Id.* at ¶ 50.

[5] *Id.* at ¶ 36.
[6] *Id.* at ¶¶ 2, 3, 17-19.

[7] *Id.* at ¶¶ 54-64.
[8] Doc. 10.

In conjunction with the Motion to Dismiss, Reynolds moves the Court to take judicial notice of four documents made available on the Louisiana Department of Environmental Quality's (LDEQ) EDMS database, when considering the Motion to Dismiss.[9] These documents consist of drafts and renewals of Defendant's NPDES permit, which Reynolds contends will prove that it did not violate its NPDES permit by discharging any unauthorized pollutants.[10] Reynolds submits that the documents should be judicially noted as true and existing.[11] MICAH opposes the motion and moves to strike exhibits 3 and 4 of Defendant's Motion to Dismiss (and Reynolds Motion to Take Judicial Notice) on the grounds that those documents are immaterial to the Court's ruling on the Motion to Dismiss.[12]

*Motion to Take Judicial Notice and Motion to Strike*

In its Motion to Take Judicial Notice, Reynolds requests that the Court take judicial notice of the following documents: (1) Enforcement Division Memo to the File, December 17, 2024;[13] (2) 2023 Draft Permit Package;[14] (3) LPDES Permit renewal Application;[15] and (4) 2010 Permit Renewal Application.[16]

In response to the Motion to Take Judicial Notice, MICAH filed a Motion to Strike the (3) LPDES Permit Renewal Application;[17] and (4) 2010 Permit Renewal Application.[18]

---

[9] Doc. 11.
[10] Doc. 11, att. 1, p. 2.
[11] Id. at 7.
[12] Doc. 19.
[13] Defendant's exhibit 1, EDMS Doc. No. 14596693
[14] Defendant's exhibit 2, EDMS Doc. No. 13898323.
[15] Defendant's exhibit 3, Doc. No. 9829985.
[16] Defendant' exhibit 4, Doc. No. 1537477.
[17] Defendant's exhibit 3, Doc. No. 9829985.
[18] Defendant' exhibit 4, Doc. No. 1537477.

MICAH maintains that Reynolds is trying to rely on these documents in ways that judicial notice does not allow, and that the Reynolds is relying on the documents outside the pleadings to support a Motion to Dismiss. See *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, (1974). MICAH argues that this is improper without converting the Motion to Dismiss to a motion for summary judgment. Federal Rule of Civil Procedure 12(d); see also *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).

Judicial notice may be taken of public records in a Rule 12(b)(6) motion without converting it into a motion for summary judgment under Rule 12(d). *George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022); *Norris v. Hearst Trust,* 500 F.3d 454, 461 n. 9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir. 1994). However, such judicial notice is for the limited purpose of determining that documents exist and have certain contents, not to prove the truth of the matters asserted therein. *Giles v. City of Dallas*, 539 F. App'x 537, 542 n. 1 (5th Cir. 2013).

MICAH complains that Reynolds is relying on the documents to prove the truth of the matter asserted, noting that in its brief supporting the Motion to Dismiss, Reynolds argues that the lead, benzo[g,h,i]perylene, and other polycyclic aromatic hydrocarbons (PAHs) sample values in the 2010 and 2015 permit applications "show *conclusively* that the alleged pollutants were not present in its wastewater discharges."[19]

---

[19] Doc. 10.

Judicial notice of public records cannot be used to prove the truth of the matters asserted therein. *Giles v. City of Dallas*, 539 F. App'x 537, 542 n. 1. (5 th Cir. 2013); see also *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5 th Cir. 1996) ( when taking judicial notice, '[s]uch documents should be considered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents"); *Roe v. e. Baton Rouge Par. Sch. Bd.*, 2024 WL 4447229, at *5 (M.D. La. Oct. 8, 2024)("[a] court must also consider—and identify—which fact or facts it is noticing from such [materials]" (quoting *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 999-1000 (9th Cir. 2018), (bracket in original).

MICAH also complains that these documents are outside the pleadings because they are not referred to in MICAH's Complaint, nor are they central to MICAH's Complaint. MICAH argues that these documents cannot be considered by the Court without converting the Motion to Dismiss to a motion for summary judgment.

Reynolds informs the Court that the renewal permit process permits the public to participate, but MICAH chose not to participate. Therefore, MICAH's suit is a collateral attack on the permit that imposes new requirements. Reynolds maintains that MICAH's suit is barred by the CWA Permit Shield.

Additionally, Reynolds asserts that MICAH is relying on its submissions under the Toxics Release Inventory ("TRI"), which is information provided to the EPA and the public concerning potential releases to the environment. TRI reports are prepared by the

facility and are based on reasonable estimates,[20] but the law does not require monitoring of TRI chemicals or other forms of verification and furthermore, Reynolds does not perform laboratory analysis of outfall samples for TRI chemicals. Reynolds informs the Court that TRI estimates are available to everyone but are not used as part of the NPDES permitting process that uses monitoring and more objective information. Reynolds asserts that TRI estimates are irrelevant and immaterial to permitting or enforcement and are not intended nor allowed for use in processing LPDES permit applications.

Reynolds contends that exhibits 3 and 4 are LPDES permit renewal applications that are publicly available in LDEQ's EDMS filing system, along with the LDEQ Memo. Therefore, they fall within the exception for consideration of these documents on a Rule 12(b)(6) motion. Reynolds contends that if these documents are not allowed to be considered by the Court, Reynolds would be prejudiced because it relied on these prior permits in preparing its current permit.

Additionally, Reynolds asserts that these documents will show that MICAH's suggestion of a false representation by Reynolds to the LDEQ is unfounded and cannot be substantiated because Reynolds fully informed the LDEQ through its review of the entire administrative record, prior permits, the 2010 and 2015 permit applications. Reynolds assert that these documents contain laboratory analytical data that shows the absence of the complained of pollutants. Reynolds also complains that MICAH is disguising the Motion to Strike as a means to strike Reynolds' properly asserted affirmative defense.[21]

---

[20] Reynolds notes that there are penalties for not reporting or under reporting, which encourages reporting estimate on worst case basis.
[21] In its Motion to Dismiss, Reynolds relies on it affirmative defenses to argue that the case must be dismissed.

Reynolds relies on these documents to show that there are no ongoing violations, which is a prerequisite to invoking this court's jurisdiction to the Clean Water Act ("CWA"), and to assert its affirmative defense of the CWA Permit Shield. Reynolds challenges MICAH's failure to address the different standard used when considering extrinsic documents in a Rule 12(b)(1) motion. *Roe v. E. Baton Rouge Par. Sch. Bd.*, 2024 U.S. Dist. LEXIS 183549 at *15 (M.D. La. 2024), which sets the standard as follows:

> [w]hen ruling on a 12(b)(1) motion, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." In reviewing a motion under Rule 12(b)(1), a court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

Reynolds relies on *E. Baton Rouge Par. Sch. Bd.*, which cites *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1984) wherein that court reasoned as follows:

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction-its very power to hear the case-there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.*

When a defendant raises a factual attack upon subject matter jurisdiction, the plaintiff "has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Patterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Reynolds argues that MICAH has not met its burden.

Additionally, Reynolds maintains that courts may consider additional documents on a Rule 12(b)(6) motion under limited circumstances that exist here. Specifically, "a court may also consider documents outside of the pleadings if they fall within certain limited categories," including documents subject to judicial notice, *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (for limited purposes discussed herein), and on a motion to dismiss under Rule 12(b)(6), the court may permissibly refer to matters of public record. *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994); *see also Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (considering Rule 12(b)(6) motion, the "district court took appropriate judicial notice of publicly available documents and transcripts produced by the FDA, which were matters of public record directly relevant to the issue at hand).

The Court acknowledges that it cannot take judicial notice of the contents of documents for the truth of the matters asserted. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). However, the Court agrees with Reynolds that we may consider documents outside the pleadings to determine if this Court has jurisdiction and the Court does not need to convert the Motion to Dismiss filed by Reynolds to a motion for summary judgment. Therefore, the Court will grant Reynolds' Motion to Take Judicial Notice as to the four exhibits and deny MICAH's Motion to Strike.

*Motion to Dismiss*

In its Complaint, MICAH makes three allegations: (1) that Reynolds discharged unauthorized pollutants, (2) the facility needs to update its permit renewal application, and (3) the facility needs additional monitoring requirements and limits. Reynolds maintains

that this citizen suit is an impermissible attack of a properly issued permit and should be dismissed. Reynolds' asserts that the LPDES applications over the years designated the relevant substances[22] as "believed absent" from the facility's discharges based on laboratory analytical results, which were generally Non-detect ("ND") or less than the Minimum Quantification Levels ("MQLs") for each. Reynolds informs the Court that MICAH'S allegations relate to reports submitted under a different program that is not relevant to LPDES permitting, and the LDEQ, the permitting authority, considered and rejected these reports after receipt of MICAHS' Notice of Intent ("NOI").[23]

Reynolds contends that the documents represented in exhibits 1, 2, 3, and 4 are material and directly related to the subject of the litigation and Reynolds' defenses. Specifically, they show that the entire administrative record was relied upon by LDEQ in issuing the current permit, there are no unauthorized discharges of pollutants, and there was no need for additional monitoring or effluent limits. Reynolds relies on these documents to show that there are no ongoing violations of the CWA, a prerequisite to invoking this Court's jurisdiction.

Reynolds argues that the Court's consideration of these documents will demonstrate that this Court lacks subject matter jurisdiction because there are no ongoing violations, a predicate for subject matter jurisdiction, that the CWA Permit Shield applies, and this suit is an impermissible collateral attack of its permit.

---

[22] Lead, benzo[g,h,i]perylene and other polycyclic aromatic compounds (PAHs).
[23] Defendant's exhibit 1, LDEQ, *Enforcement Division Memo to the File, Citizens Suit: Micah 6:8 and Healthy Gulf v. Reynolds Metals Company, LLC (Reynolds)*, December 17, 2024, EDMS Doc. No. 14596693, https://edms.deq.louisiana .gov/app/doc/view?doc=14596693.

In its opposition, MICAH maintains that Reynold's Rule 12(b)(6) motion fails because Plaintiffs have pleaded claims showing they are entitled to relief. MICAH contends that Reynolds raises irrelevant factual disputes, the 2010 and 2015 sampling data in the permit applications is irrelevant, and that Reynolds' toxin discharges[24] can have a significant impact on water quality. MICAH also maintains that Reynolds does not qualify for the CWA's "Permit Shield."[25]

## RULE 12(b)(1) STANDARD

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides:

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction. . .

A court may base its disposition of a motion to dismiss under Rule 12(b)(1) on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Robinson v. TCI/US West Communications, Inc.*, 117 F.3d 900 (5th Cir. 1997), citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, (1981).

Courts may consider affidavits and exhibits submitted in connection with a Rule 12(b)(1) motion to dismiss. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). Once challenged with competent proof, the plaintiff must prove by a preponderance

---

[24] Lead, benzo[g, h, i]perlyene, and PAHs.
[25] "Compliance with a permit issued pursuant to this section shall be deemed compliance." 33 U.S. C. § 1342(k).

of the evidence that the court has subject matter jurisdiction. *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986). A motion to dismiss under Rule 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claims that would entitle plaintiff to relief. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D.Tex.1995). The party asserting jurisdiction has the burden of pleading and proving that the Court has subject matter jurisdiction and must do so by a preponderance of the evidence. *Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 487 (5th Cir. 2014). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

When reviewing a "facial attack" on jurisdiction, the well-pleaded factual allegations of the Complaint are accepted as true, and the Court evaluates the sufficiency of those allegations. *Isom v. Louisiana Off. of Juv. Just.*, No. CV 21-00013, 2021 WL 5763560, at *2 (M.D. La. Dec. 3, 2021) (citing *Paterson v. Weinberger*, 644 F.2d 521, 524 (5th Cir. 1981)). A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Hall v. Louisiana*, 974 F. Supp. 2d 978, 985 (M.D. La. 2013) (citing *Benton v. U.S.*, 960 F.2d 19, 21 (5th Cir.1992)).

Reynolds argues that its facility has not been discharging toxins since 2019, whereas, in their Complaint, Plaintiffs alleges otherwise. Specifically, MICAH alleges that Reynolds has unpermitted discharges of lead and PAHs, including benzo[g,h,i]perylene. MICAH argues that this factual dispute is irrelevant on a 12(b)(6) motion because all well-pleaded facts are considered by the court as true. *Twombly*, 550 U.S. at 570.

MICAH relies on *Gwaltney of Smithfield, Ltd v. ChesaPeake Bay Foundation, Inc.*, 484 U.S. 49, 108 S.Ct. 376 (1987) wherein the Supreme Court held that "[i]n the absence of federal or state enforcement, private citizens may commence civil actions against any person 'alleged to be in violation of' the conditions of either a federal or state NPDES permit.'" 33 § 1365(a)(1).

MICAH asserts in the Complaint that:

> Because the Permit does not authorize Alcoa Reynolds to discharge the Alcoa Pollutants from Outfalls 002, 007, 011, 014, and 017 into the Calcasieu River, by doing so Alcoa Reynolds has violated and continues to violate 33 U.S.C. 1311(a) by discharging pollutants from a point source into waters of the United States without permit authorization."

MICAH maintains that because it has alleged ongoing violations, this Court has subject matter jurisdiction. MICAH argues that the LDEQ's position (of no violation by Reynolds) is irrelevant as to whether it has pleaded the required allegations of ongoing violations and established jurisdiction. MICAH informs the Court that the purpose of the citizen suit provision is to allow citizens to enforce the CWA when federal and state governments have decided against doing so.

Reynolds remarks that MICAH relies on TRI reports to suggest that the facilities' outfall discharges contain significant pollutants; however, Reynolds contends that TRI reports are not based on monitoring and represent only conservative, worst case, estimates. See *Comparing Clean Water Act (CWA) National Pollutant Discharge Elimination System (NPDES) Discharge Monitoring Report (DMR) Data and Toxics Release Inventory (TRI) Data*, December 2014, p. 5. ("Release reports are in part based on estimates as there is no requirement for monitoring" wastewater discharges, and consequently, TRI reports "may result in inaccurately reported releases.") As such, Reynolds contends that TRI reports neither indicate, nor confirm the presence of pollutants in discharges, and MICAH is attempting to improperly use the entirely speculative and theoretical information found in Form R submissions[26] made from 2019 through 2023 to allege that certain discharges contain substances not covered by its permit. In other words, the information Reynolds used to complete a permit renewal application was based on analytical results and not speculative estimates that TRI reports contain. Furthermore, Reynolds advises that the analytical data is undisputed, which refutes MICAH'S claims.

LPDES regulations and the permit application instruct the facility to state whether specified pollutants are "believed present" or "believed absent" based on the facility's knowledge of raw materials, products and byproducts, process knowledge and/or any previous analyses of its own or similar effluent.[27] Reynolds remarks that neither the regulations, nor the application refers to TRI submissions, and TRI reports are not a part

---

[26] EPA's TRI program requires facilities in certain industries, including petcoke calcining facilities to annually reort on "Form R" their releases of certain toxic chemicals. 40 CFR 372.5, 372.22.
[27] Complaint, ¶ 49, p. 11.

of the LPDES Permitting process. Reynolds adds that the LDEQ instructions and permitting guidance indicate it is appropriate to mark "believed absent" for a particular pollutant when analytical results are reported as <MQL for the pollutant.[28]

Here, MICAH asserts Reynolds is discharging pollutants without obtaining permit authorization and making false statements in its permit application, which MICAH argues is not an attack on LDEQ's permitting decisions. MICAH is seeking to enforce the permit application correction requirements, and in the absence of authorization of these discharges under the Reynolds permit, enforce the CWA's prohibition on unpermitted discharges.

Reynolds maintains that the facility is compliant with its LPDES permit because no further consideration of the pertinent pollutants is warranted and no additional monitoring, limits, or application updates are warranted. Consequently, Reynolds posits that MICAH's allegations do not state a claim and furthermore, because Reynolds has not violated its permit, as found by the LDEQ, this Court lacks jurisdiction.

Additionally, Reynolds remarks that this Court must defer to the LDEQ's enforcement and permitting decisions and courts should not reverse substantive decisions of LDEQ unless it can be shown that the decision was arbitrary. See Louisiana Revised Statute 30:2050.21.F ("the provisions of R.S. 49:978.1(F) and (G), including the standard of review, shall apply to appeals" of permits.)

"The test for determining whether an action was arbitrary or capricious is whether the action was "without reason." This test imposes a significant limitation on judicial

---

[28] LDEQ generally implements MQLs for detection limits. *LDEQ Permitting Guidance Document for Implementing Louisiana Surface Water Quality Standards Water Quality Management Plan,* pp. 15-16, ¶ 2, Vo. 3, Version 10, Nov. 20, 2024.

review." *Rise St. James v. La. Dep't Envtl. Quality*, 383 So.3d, 956, 973 citing *Save Our Hills v. La. Dep't Envtl. Quality*, 266 So.3d 916, 927 (La. App. 1 Cir. 2019). "LDEQ's interpretations should stand unless they are arbitrary, capricious, or manifestly contrary to its rules and regulations." *Rise St. James,* 383 So.3d at 973.

Reynolds argues that the LDEQ's permitting decision was based upon full disclosure of discharges at the time of permitting and its review of the NOI.[29] Thus, the LDEQ's finding of no violations is entitled to deference.

Next, Reynolds maintains that MICAH's claims are an impermissible collateral attack that are barred from raising a challenge to modify. Reynolds suggests that Plaintiffs are attempting to impose more stringent requirements than is required by the permitting process. Reynolds notes that both MICAH 6:8 Mission and Healthy Gulf were silent during the Final Permit's public participation process, and they did not comment on the publicly noticed draft permit, nor did they appeal the final permit, despite the fact that TRI reports were publicly available. See *Chesapeake Bay Found. v. Bethlehem Steel Corp.*, 608 F.Supp. 440, 443 (D. Md. 1985) (requirements of NPDES permits are binding in the absence of a timely challenged and may not be reopened in an enforcement action.) "Neither EPA nor a citizen can use an enforcement action or citizen suit to revisit the validity of permit conditions." 33 U.S.C. sec 1342(k); *Puget Soundkeeper All.. v. Port of Tacoma*, 104 F.4th 95, 105 (9th Cir. 2024) (citing *E. I. du Pont de Nemours & Co. v. Train*, 430 U.S. 112, 138 n. 28 (1977).

---

[29] Defendant's exhibit 1, LDEQ, *Enforcement Division Memo to the File, Citizens Suit: Micah 6:8 an dHealthy Gulf v. Reynolds Metals Company, LLC (Reynolds)*, December 17, 2024, EDMS Document No. 14596693, https://edms.deq.louisiana.gov/app/doc/view?doc=14596693,

"As the Supreme Court has explained, '[t]he purpose of [section 1342(k)] seems to be to . . . relieve [permit holders] of having to litigate in an enforcement action the question whether their permits are sufficiently strict. In short, [section 1342(k)] serves the purpose of giving permits finality." *Id.* Consequently, Reynolds argues that once a permit becomes final, citizens may not collaterally attack the permit and seek to modify its conditions because courts can "not consider collateral attacks on the validity of permit conditions" or the absence thereof through a citizen's suit. *Id*.

Here, LDEQ's Enforcement Division Memo to the file concluded, after review of the TRI reports despite having no connection to NPDES permitting, that Reynolds is compliant with its permit and there is no need for other monitoring requirements or limits. LDEQ concluded there are no violations. *See LDEQ Memorandum to file* at p. 2.

Additionally, Reynolds argues that a citizen's suit is predicated on the presence of a violation that is ongoing at the time the complaint is filed. 33 U.S.C. § 1635(1)(1). See *Daigle v. Cimarex Energy Co.*, No. 2:17-01523, 333 F. Supp. 3d 604, 612 (W.D. La. 2018) (§505 of the CWA does not permit citizens' suits for past violations, only current ongoing violations as of the filing of the suit) (citing *Gwaltney,* 484 U.S. 49, 64, 108 S.Ct. 376 (1987) (§505(a)'s requirement that a defendant "be in violation" "is a requirement that citizen-plaintiffs allege a state of either continuous or intermittent violation.")).

The Court has reviewed the LDEQ Enforcement Division Memo,[30] wherein the LDEQ reviewed the NOI previously filed by MICAH. The NOI made the same accusations

---

[30] Doc. 10-2.

regarding alleged discharges of "Lead. Benzo[g.h.i]perylene,and PAHs" from outfalls. After review of the administrative record that included the TRI data and the LPDES, the LDEQ found that "there was no evidence of violation regarding the failure to correct the permit application."[31] In other words, Reynolds was not causing and/or allowing unpermitted discharges from its facility and thus there was nothing to correct. It appears that MICAH is opposed to the permitting process, which does not take into account the TRI reporting, and thus no additional monitoring conditions or limitations beyond the LPDES permit would be required based solely on the TRI data.[32] Giving deference to the LDEQ's decision that there was no violation by Reynolds of its permit and no evidence that Reynolds failed to correct the permit application information, the Court finds that it lacks subject matter jurisdiction as to MICAH's citizen suit.

## **CONCLUSION**

For the reasons explained herein, the Court finds that because there is no evidence of ongoing violations, this Court lacks subject matter jurisdiction. Accordingly, the Court will grant Reynolds Metals Company, LLC's [Reynolds] Motions to Dismiss (Doc. 10) as to lack of subject matter jurisdiction, and the instant matter will be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Additionally, the Court will grant

---

[31] *Id.*

[32] Reynolds states that it does not analyze outfall discharge for TRI chemicals a part of tis CWA obligations, and the TRI estimates do not meet any 40 CFR part 136 test (laboratory) method. As such they are not suitable for inclusion in NPDE permit applications, renewals or updates. 40 CFR § 122.21(g)()7)(e). Additionally, Emergency Planning and Community Right-to-Know Act provides that TRI does not affect any obligations or liability under other federal statutes, including under the CWA—"[n]othing in this title shall—(3) affect or modify in any way the obligations or liabilities of any person under other Federal law" such as the CWA. 42 U.S.C. § 11041..

Reynolds' Motion to Take Judicial Notice and deny Micah 6:8 Mission and Healthy Gulf's Motion to Strike.

    **THUS DONE AND SIGNED** in Chambers on this 6th day of August, 2025.

                                        **JAMES D. CAIN, JR.**
                              **UNITED STATES DISTRICT JUDGE**