# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | |
|---|---|
| **MICAH 6:8 MISSION and HEALTHY GULF** | **CIVIL ACTION NO. 2:25-cv-00156** |
| | |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| | |
| **REYNOLDS METALS COMPANY, L.L.C.** | **MAGISTRATE JUDGE THOMAS P. LEBLANC** |

## REYNOLDS METALS COMPANY, L.L.C.'s
## MEMORANDUM IN OPPOSITION
## TO PLAINTIFF'S MOTION TO ALTER JUDGMENT

/s/ Andrew J. Harrison, Jr.

Andrew J. Harrison, Jr., Lead Attorney
(La. Bar #20463)
Madeline Briody
(La. Bar # 31009)
**HARRISON LAW, LLC**
301 Main Street, Suite 820
Baton Rouge, LA 70801
Telephone: (225) 388-0065
Facsimile: (225) 388-0501
ajh@harrisonlawllc.com
madeline@harrisonlawllc.com

and

Arnold W. Reitze, Jr.
(D.C. Bar # 108951)
**HARRISON LAW, LLC**
9033 Skye Treeline Street
Las Vegas, NV 89166
Telephone: (702) 857-3933
Facsimile:  (225) 388-0501
arnold@harrisonlawllc.com
*Admitted Pro Hac Vice*

***Attorneys for defendant, Reynolds Metals Company, L.L.C.***

## <u>TABLE OF CONTENTS</u>

I.   Relevant Facts and Procedural History ................................................................. 1

II.  Legal Standard ..................................................................................................... 3

III. Law and Argument ............................................................................................... 4

    A.   No Manifest Error Has Taken Place Because Reynolds Did Not Raise Any New Argument. ................................................................................................... 4

    B.   Plaintiffs Could Have Asked for Leave to File a Sur-Reply. .................................. 9

    C.   The Court May Inquire into the Basis of Its Subject Matter Jurisdiction *Sua Sponte.* ........................................................................................................... 10

IV.  Plaintiffs May Not Rely Upon *Williamson v. Tucker* to Sustain Jurisdiction. ................ 11

    A.   The Complaint was Wholly Insubstantial and Frivolous. .................................... 11

    B.   Plaintiffs Allegations Are Made Solely to Obtain Jurisdiction. ............................ 13

V.   Plaintiffs' Allegations Do Not Meet the Good Faith Requirement in *Gwaltney*. ............. 15

CONCLUSION .......................................................................................................... 17

## Table of Authorities

## Cases

*Atlantic States Legal Foundation v. Eastman Kodak Co.*, 12 F.3d 353 (2d Cir. 1993), ............... 12

*Austin v. Kroger Texas*, 864 F.3d 326 (5th Cir. 2017) .................................................................... 10

*Bell v. Hood*, 327 U.S. 678 (1945) ........................................................................................ 10, 12

*Carter v. Swiftships, LLC*., No. 16-0370, 2018 U.S. Dist. LEXIS 35763 (W.D. La. 2018) ........... 4

*Chevron Oronite Co., LLC v. Jacobs Field Services North America, Inc*., 951 F.3d 219 (5th Cir. 2020) ............................................................................................................................................. 4

*E.I. du Pont de Nemours & Co., v. Train*, 430 U.S. 112 (1977) ................................................... 14

*Evans v. Tubbe*, 657 F.2d 661(5th Cir. 1981) ............................................................................... 14

*Fragumar Corp., N.V. v. Dunlap*, 685 F.2d 127 (5th Cir. 1982) ................................................. 14

*Gwaltney of Smithfield v. Chesapeake Bay Found*., 484 U.S. 49 (1987) ............................... 15, 16

*Hitt v. City of Pasadena*, 561 F.2d 606 (5th Cir. 1977) ................................................................. 5

*In re Transtexas Gas Corp*., 303 F.3d 571(5th Cir. 2002) ............................................................. 3

*Kostmayer Construction, LLC. v. Port Pipe & Tube, Inc.*, No. 2:16-1012, 2017 U.S. Dist. LEXIS 182864 (W.D. La. 2017) ................................................................................................................. 5

*McClendon v. United States*, 892 F.3d 775 (5th Cir. 2018). ........................................................... 9

*Menchaca v. Chrysler Credit Corporation*, 613 F. 2d 507 (5th Cir. 1980) ................................... 10

*Moody National Bank of Galveston v. GE Life & Annuity Assurance* Company, 383 F.3d 249 (5th Cir. 2004). ............................................................................................................................... 5

*Neitzke v. Williams*, 490 U.S. 319 (1090) .................................................................................... 16

*Paterson v. Weinberger*, 644 F.2d 521(5th Cir. 1981) ................................................................... 5

*Puget Soundkeeper All. v. Port of Tacona*, 104 F. 4th 95 (9th Cir. 2024) ....................................... 14

*Reeves v. Guiffrida*, 756 F.2d 1143 (5th Cir. 1985)........................................................................ 14

*Schiller v. Physicians Res. Group, Inc*., 342 F.3d 563 (5th Cir. 2003)............................................ 3

*SEC v. Life Partners Holdings, Inc.* 854 F.3d 765 (5th Cir. 2017) .................................................... 4

*Redhawk Holdings Corporation v. Schreiber*, 836 Fed. Appx. 232 (5th Cir. 2020) ...................... 10

*Southern Recycling, LLC v. Aguilar (In re S. Recycling, LLC)*, 982 F.3d 374 (5th Cir. 2020)...... 13

*Stem v. Gomez*, 813 F.3d 205 (5th Cir. 2016)................................................................................... 15

*Sundaram v. Flagstar Bank F.S.B*., No. H-12-0491, 2012 U.S. Dist. LEXIS 154024 (S.D. Tex. 2012) ................................................................................................................................................... 4

*Tellis v. LeBlanc*, No. 5:18-00541, 2024 U.S. Dist. LEXIS 170541 (W.D. La. 2024)............... 5, 6

*Templet v. HydroChem*, Inc., 367 F.3d 473 (5th Cir. 2004)............................................................. 3

*United States v. Regeneron Pharms., Inc*., 128 F.4th 324 (1 Cir. 2025) ........................................ 13

*United States v. SCRAP*, 412 U.S. 669 (1973) ............................................................................... 16

*Weems v. Hodnet*, No. 10-cv-1452, 2011 U.S. Dist. LEXIS 75172 (W.D. La. 2011) .................. 10

*Williams v. Monitowoc Cranes, LLC*, 898 F3d 607 (5th Cir. 2018) ................................................ 4

*Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981).........................................................11, 12, 14

## **Statutes**

1 U.S.C. § 3…………………………………………………………………………………………13

33 U.S.C. §1342........................................................................................................................... 14

42 U.S.C. §11023…………………………………………………………………………………...12

42 U.S.C. §11041 ...............................................................................................1, 11, 12, 13

## Rules

Fed. Rule Civ. Proc. Rule 12(b)(1) ........................................................2, 3, 4, 5, 6, 7, 9, 10, 11, 13

Fed. Rule Civ. Proc. Rule 12(b)(6) ........................................................................2, 4, 6, 7, 11

Fed. Rule Civ. Proc. Rule 59................................................................................. 1, 3,4, 9

Fed Rule Civ. Proc. Rule 56.....................................................................................11

Local Rule 7.1 ................................................................................................. 1, 3

## Regulations

40 CFR §122.21…………………………………………………………………………14

40 CFR §136 ................................................................................................ 14

## Other Authorities

*Permitting Guidance Document for Implementing Louisiana Surface Water Quality Standards, Water Quality Management Plan,* Vol. 3, Version 10, Nov. 20, 2024…………………..…….2

**MAY IT PLEASE THE COURT:**

Defendant, Reynolds Metals Company, LLC ("Reynolds"), opposes herein the Motion to Alter Judgment submitted by MICAH 6:8 Mission and Healthy Gulf ("Plaintiffs"), pursuant to FRCP Rule 59(e) and Local Rule 7.1. As set forth below, Reynolds maintains that no reconsideration of or alteration to the Court's judgment is warranted because no manifest error exists.

## I.  Relevant Facts and Procedural History

In this Clean Water Act ("CWA") citizen's suit, Plaintiffs made unfounded allegations that Reynolds' Lake Charles facility unlawfully discharged pollutants in violation of its NPDES permit. Plaintiffs' sole basis for these allegations is Reynolds' Toxic Release Inventory ("TRI") estimates on Form R Reports, which are not relevant because TRI estimates do not conform to regulatory standards for analytical methods required for CWA permitting or enforcement and do not indicate the presence of a pollutant in outfall discharges. Moreover, the statute [EPCRA §321(a)(3), 42 U.S.C. §11041(a)(3)], discussed below, prohibits the use of TRI estimates to affect obligations or liabilities under other environmental statutes, such as the CWA.[1]

Plaintiffs also improperly argued that Reynolds knowingly failed to disclose all pollutants in the facility's discharge[2] and, claimed the facility required an updated permit that would require additional monitoring requirements and effluent limits.[3] The facility's administrative record, which is available to the public and contains prior laboratory analytical results showing Non-

---

[1] Doc. 1 at ¶¶ 42-48; 42 USC §11041.
[2] Id. at ¶¶ 62.
[3] Doc. 1 at ¶¶ 62-64.

Detect ("ND") or Minimum Quantification Level ("<MQL")[4] for those pollutants, contradicts such allegations, and shows Reynolds fully apprised LDEQ of all pollutants present in its discharge.

After receiving Plaintiffs' Notice of Intent ("NOI") that is required to initiate a citizen suit, the Louisiana Department of Environmental Quality's ("LDEQ") Enforcement and Permitting personnel investigated and concluded that Reynolds is compliant with its permit, and no need exists to update their permit or to impose additional monitoring or limits.  Thus, LEDQ's position is there were no ongoing violations, which is a jurisdictional predicate for a CWA Citizen's Suit. The Emergency Planning and Community Right-to-Know Act ("EPCRA"), discussed below, bars the use of TRI information to affect obligations and liabilities of persons under other federal statutes, such as, the CWA.  This indicates the plaintiffs' allegations were not made in good faith and are frivolous, which is supported by the LDEQ Administrative Record, which shows plaintiffs did not conduct a minimal level investigation required before filing suit.

When Plaintiffs filed suit, Reynolds moved to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. Proc. Rule 12(b)(1) because of the absence of an ongoing violation.  Reynolds also filed a motion for failure to state a claim under Fed. R. Civ. Proc. Rule 12(b)(6) because the CWA Permit Shield precludes a suit against a facility that is compliant with its permit and because the suit is an impermissible collateral attack upon a properly issued permit.[5]  The Court issued a Memorandum Ruling (Doc. 25), which held that, in the absence of ongoing violations, the Court

---

[4] Consistent with permit application instructions and as noted in the July 26, 2022 permit renewal application, Reynolds relied upon process knowledge, and prior laboratory analytical results which show neither lead nor PAHs, including benzo[g,h,i]perylene, are found in the effluent discharges.  Based on this information, the facility stated that the pertinent pollutants were "believed absent" which is supported by prior laboratory data results indicating ND or <MQL.  Based on this data, LDEQ's Permitting Guidance provides that no further consideration of such pollutants is required in permitting.  *See also Permitting Guidance Document for Implementing Louisiana Surface Water Quality Standards, Water Quality Management Plan, Vol. 3, Version 10*, Nov. 20, 2024 at pages 15-16, https://deq.louisiana.gov/assets/docs/Permits/Implementation_Procedures_Version_10.pdf.

[5] Doc. 10, p. 9-13.

lacked subject matter jurisdiction over the law suit because there were no ongoing violations.  A Judgment was issued on August 6, 2025 (Doc. 26).  Undeterred by this Court's ruling that subject matter jurisdiction is lacking, Plaintiffs have continued to press their baseless and unsupported claims, by filing a Motion to Alter Judgment (Doc. 31) on September 3, 2025.  They seek to have the same claims heard again regardless of the absence of subject matter jurisdiction and in the absence of a good-faith allegation.  These efforts serve only to inappropriately use judicial resources and cause Reynolds to incur additional attorney's fees.  This Court should not alter its judgment in this matter.

## II.  Legal Standard

Plaintiffs filed a motion in accordance with FRCP 59(e) and Local Rule 7.1 requesting this Court to reconsider and alter its August 6, 2025 Order and its Judgment of September 3, 2025 that granted Reynolds' Rule 12(b)(1) motion to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction for failure to meet the required elements for a Clean Water Act citizen suit.[6]

A Rule 59(e) motion questions the correctness of a judgment and, thus, serves the narrow purpose of affording a party an attempt to correct manifest errors of law or fact, or to present newly discovered evidence.  *In re Transtexas Gas Corp*., 303 F.3d 571, 581 (5th Cir. 2002). Such motions are not intended to rehash evidence, legal theories or arguments that could have been raised prior to the judgment, nor are such motions to be used as a disguised attempt to relitigate arguments that have already been lost.  *Schiller v. Physicians Res. Group, Inc*., 342 F.3d 563, 567 (5th Cir. 2003). Further, a motion to alter or amend a judgment is "an extraordinary remedy that should be used sparingly."  *Templet v. HydroChem*, Inc., 367 F.3d 473, 479 (5th Cir. 2004).

---

[6] Doc. 25.

"Whatever may be the purpose of Rule 59(e), it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge." *Carter v. Swiftships, LLC*., No. 16-0370, 2018 U.S. Dist. LEXIS 35763, at \*2 (W.D. La. 2018) (quoting *Sundaram v. Flagstar Bank F.S.B*., No. H-12-0491, 2012 U.S. Dist. LEXIS 154024, at \*2 (S.D. Tex. 2012).  Plainly stated, raising a claim for the first time on a Rule 59(e) motion is simply an example of the old adage "too little, too late."  Plaintiffs' Motion to Alter Judgment is exactly that.

## III.  Law and Argument

### A.  No Manifest Error Has Taken Place Because Reynolds Did Not Raise Any New Argument.

Plaintiffs urge this Court to alter its judgment under a theory that the Court committed manifest error in granting Reynolds Rule 12(b)(1) motion to dismiss.  The Fifth Circuit states that "manifest error is one that is plain and indisputable, and that amounts to a complete disregard of the controlling law." *Chevron Oronite Co., LLC v. Jacobs Field Services North America, Inc*., 951 F.3d 219, 227 (5th Cir. 2020) (quoting *Williams v. Monitowoc Cranes, LLC*, 898 F3d 607, 615 (5th Cir. 2018); *SEC v. Life Partners Holdings, Inc*. 854 F.3d 765, 777 (5th Cir. 2017).  The "manifest error" that Plaintiffs allege, for the first time in this litigation, is that Reynolds raised its factual Rule 12(b)(1) argument for the first time on reply, an allegation which Reynolds disputes. Plaintiffs have lodged many pleadings in this matter, and until the filing of the Motion to Alter Judgment, they never raised this concern. Moreover, this argument, addressed in detail below, ignores the fact that jurisdiction can be challenged at any time and can be raised by the Court.

Reynolds filed its Motions to Dismiss based on both Rule 12(b)(6) and Rule 12(b)(1) challenges.  In keeping with Fifth Circuit jurisprudence, which states that when a Rule 12(b)(1) motion is filed with a Rule 12(b)(6) motion, the court should consider the jurisdictional attack

before addressing the attack on the merits *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977), the Court ruled in Reynolds' favor, dismissing the complaint for lack of subject matter jurisdiction pursuant to FRCP Rule 12(b)(1).

Reynolds notes that under FRCP Rule 12, a party is not explicitly required to state whether they are raising a factual or facial challenge to subject matter jurisdiction. The Fifth Circuit clearly states that "the form or name of a motion is irrelevant, and that what matters is its substance." *Tellis v. LeBlanc*, No. 5:18-00541, 2024 U.S. Dist. LEXIS 170541, at *7 (W.D. La. 2024) *(quoting Moody National Bank of Galveston v. GE Life & Annuity Assurance* Company, 383 F.3d 249, 251 (5th Cir. 2004)). Fifth Circuit case law also states that the court evaluates a Rule 12 motion to determine whether a facial or factual challenge or both is being made, and a court makes this determination based on the information that the defendant provides. If a defendant simply files a Rule 12(b)(1) motion, the court examines the sufficiency of the allegations in the complaint, and if properly alleged they are presumed true, and the complaint stands. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). If the "defendant submits affidavits, testimony, or other evidentiary materials," it is a factual attack upon jurisdiction. If the challenge is factual, the burden is on the plaintiff to prove by a preponderance of the evidence that the court has subject matter jurisdiction. *Id.* This was also discussed in *Kostmayer Construction, LLC. v. Port Pipe & Tube, Inc.*, No. 2:16-1012, 2017 U.S. Dist. LEXIS 182864, at *6 (W.D. La. 2017). There, the court stated: "A defendant's Rule 12(b)(1) motion is a "facial attack" if it is not supplemented with affidavits, testimony, or other evidentiary materials…Because Port Pipe submitted no evidence with its Rule 12(b)(1) motion, it has raised a "facial attack…" *Id.* at *6 (citing *Weinberger,* 644 F.2d at 523). A plain reading of these statements from the cases indicates that nothing more is required from the defendant filing the motion because the court can discern the difference between the two types of

5

challenges.  There is no express requirement in the Rules of Federal Civil Procedure or the jurisprudence that the defense must spell out which sort of subject matter challenge it asserts.  Case law also states that it does not necessarily matter what label a movant attaches to its pleadings because the court will examine the substantive material therein when it conducts its evaluation. *Tellis v. LeBlanc*, 2024 U.S. Dist. LEXIS at *7.

Since Reynolds filed a motion for judicial notice requesting consideration of documents extrinsic to the Complaint, concurrently with its Motion to Dismiss pursuant to both FRCP Rule 12(b)(1) and 12(b)(6), it was raising at a minimum a factual challenge to jurisdiction though not to the exclusion of a facial challenge.  Plaintiffs' suggestion that Reynolds waited to raise its factual challenge for the first time in its reply is not justified, since Reynolds attached documents both outside and inside the Complaint in support of its argument that subject matter jurisdiction was lacking in the first pleading it filed – its Motion to Dismiss.  In addition, Plaintiffs also attached permit documents to the Complaint and referred to the LDEQ Memo in the Complaint.[7]

Reynolds' pleadings focused its request to the Court to consider extrinsic documents to the complaint, as well as the LDEQ Memo (referred to in the Complaint) to settle the jurisdictional questions, because the LDEQ Memo and the administrative record demonstrated that Reynolds was not in violation of its NPDES permit or any effluent limitation, and it had properly apprised the LDEQ of all constituents in its discharge.  Reynolds' position for the duration of this litigation has been that the CWA's citizen suit provision contains a jurisdictional predicate that plaintiff must make good faith allegations of ongoing violations before such a suit can be maintained and the allegations cannot be baseless or frivolous.  That Plaintiffs' seasoned counsel now wishes to argue

---

[7] Reynolds additionally provided Plaintiffs a copy of the LDEQ Memo, when it responded to Plaintiffs' NOI on December 23, 2024, and prior to when Plaintiffs filed their Complaint.

that this factual challenge was a new argument that it did not have the chance to respond to, which is an attempt on their part to relitigate this matter in the guise of their Motion to Alter the Judgment.

A review of Reynolds' pleadings demonstrates that its position that there is a factual challenge to subject matter jurisdiction was alleged at the outset and thereafter as demonstrated in the following documents:

a. Document 10-1 – Reynolds' Memorandum in Support of Motion to Dismiss, is peppered with references to the extrinsic documents Reynolds' relied upon in support of both its 12(b)(6) and 12(b)(1) motions. Subject matter jurisdiction is specifically discussed in its own section on pages 15-16, and Reynolds referred to the LDEQ Memo and the entire administrative record in support of its assertion that subject matter jurisdiction was lacking. Reynolds' requested that the Court take judicial notice of the LDEQ Memo, and parts of the LDEQ administrative record make it abundantly clear that Reynolds raised a factual challenge to subject matter jurisdiction.

b. Document 11-1 – Reynolds' Memorandum in Support of Motion to Take Judicial Notice - filed simultaneously with its Motion to Dismiss, also demonstrated that Reynolds was bringing a factual challenge to jurisdiction, since Reynolds requested the Court's notice of documents both outside and inside the pleadings in support of its jurisdictional challenge. A direct quote from this filing: "Reynolds should be allowed to rely upon the entirety of the Memo in its Rule 12 motions."[8]

c. Document 21- Reynolds' Reply Memorandum in Support of its Motion to Dismiss contains an extensive discussion of all the factual issues, which were already discussed in its Motion to Dismiss, showing why the Court did not have subject matter jurisdiction.

d. Document 23 – Reynolds' Opposition to Motion to Strike – Reynolds extensively discusses the documents a court may consider in examining a 12(b)(1) challenge.[9]

Reynolds additionally observes that Plaintiffs pleadings demonstrate that they clearly understood Reynolds raised a 12(b)(1) factual challenge. For example, in Plaintiffs' Opposition

---

[8] Doc. 11-1, referring to the LDEQ Memo at p. 4.
[9] Doc. 23, p.p. 5-6.

to Reynolds' Motion to Dismiss,[10] the plaintiffs argued that "Reynolds' disagreements with Plaintiffs' factual allegations must wait for later stages in this litigation."[11]  Plaintiffs also addressed  the LDEQ Memo stating: "LDEQ's position on Reynolds' violations is irrelevant as to whether Plaintiffs have pleaded the required allegations of ongoing violations and established jurisdiction."[12]  Plaintiffs devoted an entire page of their Opposition to a discussion of Reynolds' 2010 and 2015 permit applications, documents Reynolds' attached to its Motion to Dismiss to support its challenge to the Courts' jurisdiction.[13]  The Opposition concludes with the statement by Plaintiffs that "Reynolds has not provided any evidence that, at the time Plaintiffs filed this Complaint, Reynolds has ceased discharging these pollutants, amended its permit application, or obtained a modified permit authorizing these discharges.[14]  The documents Plaintiffs disputed in their Opposition were the documents Reynolds put forth in support of its factual challenge to the Court's jurisdiction.

Essentially, the Plaintiffs' Opposition to Reynolds' Motion to Dismiss[15] and their Motion to Strike,[16] both referred extensively to the LDEQ Memo and the documents from the administrative record that Reynolds sought judicial notice of to further bolster their own arguments.[17]  Yet, now, after using the documents Reynolds relied upon to support its factual challenge to jurisdiction in their own pleading, the Plaintiffs argue that Reynolds' factual challenge to jurisdiction came as a surprise, and that they were deprived of an opportunity to refute this

---

[10] Doc. 18, p. 22.
[11] *Id*. at p. 8.
[12] *Id*. at p. 22.
[13] *Id*. at p. 11.
[14] *Id*. at p. 23.
[15] Doc. 18.
[16] Doc. 19.
[17] *Id*. at pp. 11, 15, 16, 17, 18 and 22.

contention.  It is obvious that Plaintiffs knew there was, at a minimum, a factual challenge since they attempted to suppress the use of the evidentiary documents.

The Court made no error in dismissing Plaintiffs' Complaint for lack of subject matter jurisdiction, and as demonstrated herein, it was manifestly obvious that from the beginning Reynolds was making, at a minimum, a factual challenge to the Court's jurisdiction.  Additionally, FRCP Rule 12 is silent as to any requirement that a defendant specify whether its 12(b)(1) challenge is facial or factual.  Furthermore, the jurisprudence cited above demonstrates that it is for the Court to decide how a defendant is objecting to jurisdiction based upon the pleading it submits, along with any evidence it provides in support of its motion.  The Court should deny Plaintiffs' Motion to Alter the Judgment.

**B.  Plaintiffs Could Have Asked for Leave to File a Sur-Reply.**

FRCP Rule 59(e) does not allow the court to entertain arguments that could have been raised previously and prior to final judgment.  *See McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018).  In their Motion to Alter Judgment, plaintiffs allege as manifest error the fact that Reynolds' made a 12(b)(1) factual challenge to subject matter jurisdiction in its reply.  This is the first time in this litigation that Plaintiffs raise this issue.  Plaintiffs filed many pleadings in this matter, never mentioning this issue as a source of concern.  It is inappropriate at this time to allow Plaintiffs to argue that the defense raised a new argument on reply that they did not have an opportunity to address.

If Plaintiffs believed they were injured or prejudiced by Reynolds' allegedly referring to a factual challenge in its reply memorandum for the first time, Plaintiffs could have, but did not, ask for leave of the Court to file a sur-reply which would have allowed them to respond to any new arguments, legal theories or evidence allegedly raised for the first time in Reynolds' reply brief.

Sur-replies are generally disfavored; however, the Fifth Circuit holds that it is an abuse of discretion for a district court to deny a party the opportunity to file a sur-reply in response to a reply brief that raises new arguments that the court then relies upon. *See Redhawk Holdings Corporation v. Schreiber*, 836 Fed. Appx. 232, 235-236 (5th Cir. 2020); *Austin v. Kroger Texas*, 864 F.3d 326, 336 (5th Cir. 2017) (district court properly denied a motion to file a sur-reply because no new arguments raised in reply brief.")

Plaintiffs raise this issue for the first time here, using this Motion to Alter the Judgment as a disguised attempt to relitigate their case. This Court does not equivocate on this issue – and its position is that "sur-replies often amount to little more than a strategic effort by the nonmovant to have the last word on a matter." *Weems v. Hodnet*, No. 10-cv-1452, 2011 U.S. Dist. LEXIS 75172 at *2 (W.D. La. 2011). It is only now, after the Court dismissed Plaintiffs' Complaint that they allege that Reynolds raised a new argument on reply, and as demonstrated herein, this is simply not the case. This Court should let its decision stand and deny Plaintiffs' Motion to Alter the Judgment.

### C. The Court May Inquire into the Basis of Its Subject Matter Jurisdiction *Sua Sponte*.

"It is axiomatic that a district court may inquire into the basis of its subject matter jurisdiction at any state of the proceedings. A fortiori, a motion to dismiss under Fed. R. Civ. P. R. 12(b)(1) for lack of subject matter jurisdiction must include an inquiry by the court into its own jurisdiction." *Menchaca v. Chrysler Credit Corporation*, 613 F. 2d 507, 511 (5th Cir. 1980). A factual challenge to subject matter jurisdiction questions the existence of subject matter jurisdiction, despite what the pleading alleges, and the court may consider matters outside the pleadings to determine whether it has subject matter jurisdiction. Even if Reynolds had not raised

this issue, the Court was obligated to assure itself that its exercise of jurisdiction was proper because a court with no subject matter jurisdiction cannot issue a valid ruling.

## IV. Plaintiffs May Not Rely Upon *Williamson v. Tucker* to Sustain Jurisdiction.

### A. The Complaint was Wholly Insubstantial and Frivolous.

Plaintiffs use *Williamson v. Tucker*, 645 F.2d 404,415 (5th Cir. 1981) to support their contention that this Court committed manifest error when it dismissed their Complaint pursuant to Rule 12(b)(1), stating that "when a Rule 12(b)(1) challenge to jurisdiction is intertwined with the merits, district courts should retain jurisdiction and instead deal with the objection as a direct attack on the merits of the case under either FRCP Rule 12(b)(6) or Rule 56. *Id*. *Williamson* involved a 3000-page record, but the District Court's decision was considered by the Fifth Circuit to be lacking in the detail needed for appellate review. The Fifth Circuit held that with a factual issue involving a 12(b)(1) motion "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." "The distinction between factual Rule 12(b)(1) motions and factual Rule 12(b)(6) motions is rooted in the unique nature of the jurisdictional question. It is elementary that a district court has broader power to decide its own right to hear the case than it has when the merits of the case are reached." … "This means that the district court is not limited to an inquiry into undisputed facts. It may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction." *Williamson v. Tucker,* 645 F.2d 404 (5th. Cir 1981).

The district court has the power to dismiss for lack of subject matter jurisdiction based on "the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Thus, *Williamson* supports the power of the district court to determine jurisdiction.

*Williamson* tells us:

> The previously carved out exceptions are that a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.

The discussion of jurisdiction in *Williamson* supports this Court maintaining its ruling that it lacks subject matter jurisdiction. *Id*. at 415, (quoting *Bell v. Hood*, 327 U.S. 678, 682-683 (1945).

The Toxic Release Inventory is an informational reporting program established in 1986 as part of the Emergency Planning and Community Right-to-Know Act ("EPCRA").  It was enacted 14 years after the water pollution permit program was created and at a time when the CWA had a well-developed program for permitting effluent discharges.  The law states that EPCRA does not establish any obligations or liabilities under any other federal environmental statutes: "[n]othing in this title shall – (3) affect or modify in any way the obligations or liabilities of any person under other Federal law," such as, the CWA.  42 U.S.C. §11041.[18]  TRI reporting is governed by Section 313 of EPCRA, 42 U.S.C. §11023.  Plaintiffs base their unfounded, insubstantial and frivolous allegations of ongoing violations of the CWA solely on the TRI reports despite the EPCRA statute prohibiting such use.  Moreover, Plaintiffs ignored LDEQ's Memorandum prepared in response to Plaintiffs' Notice of Intent to File Suit, that TRI estimates do not play any role in the NPDES permitting program.[19]  As the Second Circuit Court of Appeals noted in *Atlantic States Legal Foundation v. Eastman Kodak Co.*, 12 F.3d 353, 359 (2d Cir. 1993), TRI estimates are reporting obligations but are not a compliance obligation under the CWA.  If Congress intended information contained in TRI Reports submitted pursuant to EPCRA to be used to constitute a violation of the

---

[18]  The TRI estimates, the sole basis for plaintiffs' allegations, do not serve as "good faith" allegations of ongoing violations.  Plaintiffs are legally barred from using TRI estimates to affect obligations and liabilities under other federal statutes, including the CWA, due to EPCRA, 42 U.S.C. §11041.  Plaintiffs have been silent during this litigation regarding this EPCRA bar.  Allegations based on estimates prepared to comply with EPCRA cannot serve as "good faith" allegations.

[19]  Reynolds will not now rehash all of the legal arguments it made in all its prior pleadings but does refer to and incorporate them herein by reference.

Clean Water Act, it could have expressly stated this. *See United States v. Regeneron Pharms., Inc.*, 128 F.4th 324,331 (1 Cir. 2025) ("Moreover, if Congress wants to make a violation of one statute a per se violation of another, it can easily say so."). Instead, Congress expressly declared that information generated under EPCRA may not affect the obligations and liabilities of persons under other federal statutes, including the CWA.

Given that Congress has expressly prohibited the use of TRI information (based in EPCRA) to affect the obligations and liabilities of persons under other federal statutes, such as the CWA, this information may not be used to establish the required elements of a CWA citizen suit.

Further, here the subject matter is not intertwined with the merits because Plaintiffs are relying upon EPCRA based reports to attempt to confer jurisdiction in a CWA case which is expressly barred by Congress. Therefore, this Court may look to the Fifth Circuit's holding in *Southern Recycling, LLC v. Aguilar (In re S. Recycling, LLC)*, 982 F.3d 374, 380-381 (5th Cir. 2020), which found that where the jurisdictional issue can be extricated from the merits and tried as a separate issue, the court could entertain a Rule 12(b)(1) motion to dismiss.[20] This Court properly considered Reynolds' challenge to subject matter jurisdiction and the dismissal of the Complaint should stand.

### B. Plaintiffs Allegations Are Made Solely to Obtain Jurisdiction.

Reynolds is complying with a validly issued LPDES permit. Therefore, the facility is entitled to rely upon its permit shield, and this litigation is merely Plaintiffs' attempt to attack a properly issued permit. Plaintiffs had the opportunity to properly challenge the issuance of

---

[20] In *S. Recycling*, the jurisdictional issue was a question as to whether DBL 134 was a vessel, and the court found this was easily extricable from the primary merits issues. *Id* at 381. "Because the jurisdictional question of whether DBL 134 is a vessel is antecedent to the merits in a limitation action, rather than intertwined with the merits, the district court did not err in applying the usual Rule 12(b)(1) standard and resolving factual disputes about the characteristics of the structure." *Id*. at 382. In determining whether the structure was a "vessel," the court looked to a different statute, 1 USC §3, for the definition of what constitutes a "vessel."

Reynolds' permit, but they were silent during the public participation process.  At that time, Plaintiffs could have, but did not, submit public comments on the draft permit, nor did they appeal the issuance of the final permit.  A permit with its validly issued conditions may not be attacked using a citizen suit.  33 U.S.C. §1342(k) and *Puget Soundkeeper All. v. Port of Tacon*a, 104 F. 4th 95, 105 (9th Cir. 2024) (citing *E.I. du Pont de Nemours & Co., v. Train*, 430 U.S. 112, 138 n. 28 (1977).  As this Court noted in its Ruling:

> It appears that MICAH is opposed to the permitting process, which does not take into account the TRI reporting, and thus no additional monitoring, conditions or limitations beyond the LPDES permit would be required based solely on the TRI data.  Giving deference to the LDEQ's decision that there was no violation by Reynolds of its permit and no evidence that Reynolds failed to correct the permit application information, this Court finds that it lacks subject matter jurisdiction as to MICAH's suit.[21]

Plaintiffs' baseless allegations of ongoing violations are made solely to establish jurisdiction and they rely exclusively on information supplied under EPCRA's TRI program.  TRI information is not material in NPDES permitting and TRI estimates do not meet 40 CFR Part 136 requirements for analytical tests.[22]  The Complaint lacks any possibility of success because there are no violations to remedy.

Reynolds further notes that the litany of cases Plaintiffs provided in the form a string citation after its discussion of *Williamson* state the same jurisdictional exception:  *Fragumar Corp., N.V. v. Dunlap*, 685 F.2d 127, 128 (5th Cir. 1982) ("Dismissal for want of jurisdiction is appropriate only if the federal claim is frivolous or a mere matter of form.");  *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981)( federal courts lack jurisdiction only if the claims are plainly frivolous or "patently without merit");  *Reeves v. Guiffrida*, 756 F.2d 1143, 1143 (5th Cir. 1985)(exception to a

---

[21] Doc. 25, p. 17.
[22] Additionally, Reynolds does not analyze outfall discharges for TRI chemicals as part of its CWA obligations, and because the TRI estimates do not meet any 40 CFR 136 test (laboratory method), they are not suitable for inclusion in NPDES permit applications, renewals or updates.  40 CFR §122.21(g)(7)(I)(A).

court's retention of subject matter jurisdiction when the defendant's challenge to jurisdiction is also a challenge to the existence of a federal cause of action, is if the claim is immaterial, unsubstantial, or frivolous and made solely for the purpose of obtaining federal jurisdiction.); *Stem v. Gomez*, 813 F.3d 205, 210 (5th Cir. 2016) (reciting the *Bell v. Hood* exceptions where the claim was clearly made "for the purpose of obtaining jurisdiction" or is "frivolous.").

It is patently obvious that Plaintiffs filed a baseless Complaint to get into court, after they neglected to take part in the public participation phase of Reynolds' permit renewal application. The Court was correct in its Ruling, and despite Plaintiffs contortions of fact, law and jurisprudence, it should not alter it now.

## V. Plaintiffs' Allegations Do Not Meet the Good Faith Requirement in *Gwaltney*.

The U.S. Supreme Court's *Gwaltney* decision held there must be a good faith allegation of an "ongoing violation" that is not "wholly past" for the court to have subject matter jurisdiction over a citizen's suit. *Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 64 (1987).

At the conclusion of Plaintiffs' Motion to Alter Judgment, Plaintiffs circle back to their one-sided interpretation of *Gwaltney,* suggesting that to sustain jurisdiction all that is required of them is that their complaint allege that Reynolds is in violation of the CWA.[23] Plaintiffs conveniently omit *Gwaltney's* requirement that the allegation must be in good faith, and formed after a reasonable inquiry. *Gwaltney* stated:

> Our acknowledgment that Congress intended a good-faith allegation to suffice for jurisdictional purpose, however, does not give litigants license to flood the courts with suits premised on baseless allegations. Rule 11 of the Federal Rules of Civil Procedure, which requires pleadings to be based on a good-faith belief, formed after reasonable inquiry, that they are well grounded in fact, adequately protects defendants from frivolous allegations.

---

[23] Doc. 31-1, p. 15.

*Id.* at 65.  The complaint must be something more than an "ingenious academic exercise in the conceivable."  *United States v. SCRAP*, 412 U.S. 669, 689 (1973).  Plaintiffs cite to *Neitzke v. Williams*, 490 U.S. 319, 325 (1090) where the Supreme Court stated that a complaint is "frivolous" when it "lacks an arguable basis either in law or fact."  It is clear that Plaintiffs did not conduct any reasonable due diligence prior to filing suit.  The entire Administrative Record is available to the public.  Plaintiffs could have examined a myriad of documents pertaining to the facility, including permits, applications, public notices, responses to public comments, decisional documents and laboratory analytical data showing Reynolds relied upon analytical data and the LDEQ reviewed over several permit cycles the pollutants that must be monitored and limited.  LDEQ's written conclusions should have put plaintiffs on notice that the allegations in the Complaint, never rose above the "speculative level" or even "a sheer possibility that [Reynolds] has acted unlawfully."

Contrary to the Plaintiffs' contentions, Reynolds is operating under a properly issued LPDES permit, with which it is in compliance.  LDEQ has also confirmed that TRI reports have no connection to the LPDES permit scheme, and Reynolds is not now, nor has it been in violation of its permit or any effluent limitations or monitoring requirements.  Plaintiffs even admitted[24] that TRI reporting is based upon reasonable estimates in contrast to precise analytical data relied upon by Reynolds in its permit applications.  Plaintiffs put forth no reasonable facts that there is even a remote possibility that additional monitoring and limits are necessary to protect the waters which receive the facility's discharges.  Because there are no permit violations, the Court lacks jurisdiction and this Court's ruling must stand.

---

[24] Doc 1, ¶42, p. 10.

## <u>CONCLUSION</u>

As the Court observed in its Memorandum Ruling[25], Plaintiffs are dissatisfied with the permitting process.  As discussed above, there are no allegations of law or fact in Plaintiffs' Complaint that are sufficient to invoke the Court's subject matter jurisdiction pursuant to the CWA. The Court's ruling dismissing Plaintiffs' Complaint must remain undisturbed.

Respectfully submitted on September 24, 2025,

/s/Andrew J. Harrison, Jr._____
Andrew J. Harrison, Jr., Lead Attorney
(La. Bar #20463)
Madeline Briody
(La. Bar #31009)
**HARRISON LAW, LLC**
301 Main St., Suite 820
Baton Rouge, LA 70801
Telephone:  (225) 388-0065
Facsimile:  (225) 388-0501
ajh@harrisonlawllc.com
madeline@harrisonlawllc.com

and

Arnold W. Reitze, Jr.
(D.C. Bar # 108951)
**HARRISON LAW, LLC**
9033 Skye Treeline Street
Las Vegas, NV 89166
Telephone: (702) 857-3933
Facsimile:  (225) 388-0501
arnold@harrisonlawllc.com
*Admitted Pro Hac Vice*

*Attorneys for defendant Reynolds Metals Company, L.L.C.*

---

[25] Doc. 25, p. 17.

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 24, 2025, the foregoing Memorandum in Support of Opposition to Plaintiffs' Motion to Alter Judgment was filed electronically using the CM/ECF system which will send notice of electronic filing to all counsel of record.

<u>/s/Madeline Briody</u>